IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SHANNA C. HAACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  2:12-CV-245-APR |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration[1], | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court on the petition for judicial review of the decision of the Commissioner of Social Security filed by the plaintiff, Shanna C. Haack, on June 28, 2012. For the reasons set forth below, the decision of the Commissioner is **REMANDED.**

Background

The plaintiff, Shanna C. Haack, applied for Disability Insurance Benefits and Supplemental Security Income on September 18, 2008, alleging a disability onset date of July 12, 2006. (Tr. 82-83) Her claim initially was denied on December 12, 2008, and again denied upon reconsideration. (Tr. 127-134, 138-140) Haack requested a hearing before an Administrative Law Judge ("ALJ"). A hearing before ALJ Neil Sullivan was held on January 27, 2011, at which Haack and Vocational Expert Sharon Princer testified. (Tr. 41-81)

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is automatically substituted for Michael J. Astrue as the named Defendant.

1

On February 10, 2011, the ALJ issued a decision denying benefits. (Tr. 16-36) The ALJ's decision was upheld by the Appeals Council. (Tr. 1) Haack proceeded to file her complaint with this court on June 28, 2012. Haack alleges that the ALJ erred by failing to give controlling weight to the opinion of her treating physician, Dr. Samir Gupta, did not assess her credibility properly, and ignored substantial evidence when considering whether her impairment satisfied Listing 12.04.

At step one of the five-step sequential evaluation process for determining whether an individual is disabled, the ALJ determined that Haack had not engaged in substantial gainful activity since July 12, 2006, her alleged onset date. (Tr. 21) At step two, the ALJ determined that Haack had the following severe impairments: bipolar I disorder, cannabis abuse, and obesity. (Tr. 22)

At step three, the ALJ found that Haack did not satisfy Listing 12.04 because she did not meet the "Paragraph B" criteria. (Tr. 22) The ALJ explained that to satisfy the Paragraph B criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (Tr. 22) In activities of daily living, the ALJ determined that Haack had mild restrictions. (Tr. 22) Haack had no problems with personal care, prepared meals, cleaned, did laundry, did the dishes every day, went outside every day, drove, and went shopping once a week for a couple hours. (Tr. 22) Her boyfriend reported that Haack took her medication without being told, drove her daughter to school, fixed her daughter breakfast, did laundry, cleaned, and cooked without issues. (Tr. 22)

With regard to social functioning, the ALJ determined that Haack had moderate difficulties. (Tr. 23) Haack reported that she went shopping once a week, spent time with others either shopping, going to the movies, or playing dice once a week, and had no problems with family or authority figures. (Tr. 23) Because Haack testified that she did not want to be around people and was depressed, the ALJ gave her the benefit of the doubt and found that Haack had moderate limitations. (Tr. 23)

The ALJ next found that Haack had moderate difficulties with concentration, persistence, or pace. (Tr. 23) Haack reported minimal issues in this area. (Tr. 23) She could pay attention for more than an hour, finish tasks she started, was good with written instructions, and handled stress. (Tr. 23) Her boyfriend reported that she was doing well with working part-time. (Tr. 23) Because Haack testified at the hearing that she had trouble concentrating, did not handle stress well, and could not focus due to racing thoughts, the ALJ determined she had moderate limitations in this area. (Tr. 23)

The ALJ acknowledged that Haack had episodes of decompensation, but he concluded that they were not of extended duration. (Tr. 23) Although she was hospitalized involuntarily four times, each was for less than two weeks, and there was over a year between her hospitalizations. (Tr. 23) Because she did not have marked difficulties in two of the categories or marked difficulties in one category with episodes of decompensation, the ALJ concluded that Haack did not satisfy the Paragraph B criteria.

In determining Haack's RFC, the ALJ thoroughly discussed all of Haack's symptoms which could "reasonably be accepted as consistent with the objective medical evidence" and followed a two-step process: first determining whether there could be a medically acceptable

basis for her complaints, and second evaluating the "intensity, persistence, and limiting effects of the claimant's symptoms" to determine if they limited her work ability. (Tr. 24) The ALJ determined that Haack had the Residual Functional Capacity (RFC) to do the following: "lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about 6 hours in an 8 hour day, and sit for at least 6 hours in an 8 hour workday. In addition the claimant is limited to simple routine repetitive tasks in a low stress job (defined as only occasional decision-making and occasional changes in routine work setting) with no more than occasional interaction with the public and co-workers." (Tr. 24)

In his RFC analysis, the ALJ summarized Haack's medical history before stating that he did not give controlling weight to the opinions of Haack's treating psychiatrist, Dr. Gupta, because he found Dr. Gupta's opinions internally inconsistent and not supported by the medical evidence as a whole. (Tr. 24-30) To explain his finding, the ALJ pointed to a Report of Psychiatric Status that Dr. Gupta prepared in December 2008 in which he opined that Haack's GAF score was between 60 and 70, indicating mild problems, and in which he stated that her mood was stable. (Tr. 29) In November 2009, Dr. Gupta noted that Haack was stabilized on medication but that she needed close follow up. (Tr. 29) The ALJ found it "interesting" that Dr. Gupta directed close follow-up care and then stated that the next appointment should be in 4 to 6 weeks. (Tr. 29)

The ALJ next pointed to two Mental Residual Functional Capacity Assessments that Dr. Gupta prepared, one in November 2009 and one in January 2011. (Tr. 29) The ALJ determined that these assessments were inconsistent internally without any explanation. Under the "Understanding Memory" and "Adaptation", several items originally were marked as

4

"None/Slight" and in the later report marked "Severe" without any change in Haack's diagnosis or medication. (Tr. 29) The ALJ also explained that Dr. Gupta's restriction to short and simple repetitive instructions or tasks was not consistent with Haack's testimony or her volunteer activities at church. (Tr. 29) Dr. Gupta also stated that Haack's symptoms had existed to "this degree of severity" since July 12, 2006, but the ALJ noted that this was not consistent with Dr. Gupta's prior statements indicating less severe symptoms or with the fact that Haack's treatment plan in 2008 had employment as an objective. (Tr. 29) The ALJ finally noted that Dr. Gupta appeared to be sympathetic to Haack and that he was the motivating factor in Haack's prior application because he helped her complete the paperwork. (Tr. 29)

In this same section, the ALJ concluded that Haack's medically determinable impairments reasonably could be expected to cause some of the symptoms she testified to experiencing, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC. (Tr. 25) Haack testified that she was unable to work due to her diagnosis of bipolar disorder. (Tr. 25) She stated that she had a difficult time concentrating, did not handle stress well, and during depressed episodes, she slept, had low energy and poor hygiene, cried, did not want to be around people and stayed in bed. (Tr. 25) During manic episodes she reported that she did not sleep and participated in destructive behaviors such as smoking, drinking, sex, and excessive spending. (Tr. 25)

The ALJ explained that he restricted Haack to simple, routine, repetitive tasks in a low stress job with no more than occasional interaction with the public and co-workers. He concluded that this would address her limitations because when she was compliant with her

5

medications, no further restrictions were necessary. (Tr. 27) The ALJ stated that Haack's daily activities were not as limited as one would expect given her allegations of disability. (Tr. 27) She reported taking her daughter to school, doing chores, preparing meals, doing laundry, shopping, handling money, enjoying spending time with others, finishing tasks she started, and handling stress satisfactorily. (Tr. 27) Her boyfriend confirmed this level of activity. (Tr. 27) The claimant also testified that she took care of her personal hygiene, with infrequent reminders from her grandmothers, and volunteered at church. (Tr. 27) Haack also worked sporadically since her alleged onset date. (Tr. 27) In light of her reported activities and the absence of problems when she took her medication, the ALJ concluded that Haack's testimony regarding her limitations was not credible.

At step four, the ALJ concluded that Haack had no past relevant work. Finally, at step five, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Haack had the ability to perform, including janitor (3,392 jobs in Indiana), housekeeper (7,293 jobs in Indiana), and hand packer (3,097 jobs in Indiana).

Discussion

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence

6

as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 852 (1972)(*quoting* ***Consolidated Edison Company v. NRLB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L.Ed.2d 140 (1938)); *See also* ***Jens v. Barnhart***, 347 F.3d 209, 212 (7th Cir. 2003); ***Sims v. Barnhart***, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. ***Roddy v. Astrue,*** 705 F.3d 631, 636 (7th Cir. 2013)*;* ***Rice v. Barnhart***, 384 F.3d 363, 368-369 (7th Cir. 2004); ***Scott v. Barnhart***, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez***, 336 F.3d at 539.

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable " to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.**" 42 U.S.C. §423(d)(1)(A).** The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § § 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R.§§ 404.1520(b), 416.920(b).** If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c).** Third, the ALJ determines whether that

7

severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1.** If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e).** However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f).**

Haack raises three challenges to the ALJ's decision. First, she argues that the ALJ did not give sufficient weight to the opinions of her treating psychiatrist, Dr. Gupta. Second, she argues that the ALJ did not properly evaluate her credibility. Finally, she contests whether the ALJ properly considered whether her impairments met or medically equaled Listing 12.04, Affective Disorders.

A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(d)(2)**; *See also **Schmidt v. Astrue**,* 496 F.3d 833, 842 (7th Cir. 2007); ***Gudgell v. Barnhart***, 345 F.3d 467, 470 (7th Cir. 2003). The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability."

*Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) *(quoting Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)); *See also* 20 C.F.R. 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

Internal inconsistencies in a treating physician's opinion may provide a good reason to deny it controlling weight. **20 C.F.R. § 404.1527(c)(2);** *Clifford*, 227 F.3d at 871. Furthermore, controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. *Schmidt*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion ism internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see e.g. Latkowski v. Barnhart*, 93 Fed. Appx. 963, 970-71 (7th Cir. 2004); *Jacoby v. Barnhart*, 93 Fed. Appx. 939, 942 (7th Cir. 2004).Ultimately, the weight accorded a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits...[and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)(internal citations omitted).

In his opinion, the ALJ explained that Dr. Gupta's opinions were not entitled to controlling weight because they were not supported by clinical or laboratory diagnostic techniques and were inconsistent internally. To show that Dr. Gupta's report was inconsistent

9

internally, the ALJ first pointed to Dr. Gupta's note that Haack required close follow-up, and stated that he found it "interesting" that Dr. Gupta directed close follow-up care and then stated that the next appointment should be in 4 to 6 weeks. The ALJ next pointed to two Mental Residual Functional Capacity Assessments that Dr. Gupta prepared, one in November 2009 and one in January 2011. Under the "Understanding Memory" and "Adaptation", several items originally were marked as "None/Slight" and later marked "Severe" without any change in Haack's diagnosis or medication. Dr. Gupta also stated that Haack's symptoms had existed to "this degree of severity" since July 12, 2006, but the ALJ noted that this was not consistent with Dr. Gupta's prior statements indicating less severe symptoms or with the fact that Haack's treatment plan in 2008 had employment as an objective. The ALJ also noted that Dr. Gupta appeared to be sympathetic to Haack and that he was the motivating factor in Haack's prior application because he helped her complete the paperwork.

Dr. Gupta's recommendation that Haack visit once every four to six weeks was an increase from her previous attendance of once every eight weeks. However, Haack did not go without treatment during the lapses in time between her appointments with Dr. Gupta. Rather, she continued to see a therapist at Porter-Starke Services on a daily basis between appointments with Dr. Gupta. The ALJ ignored this evidence, leaving the court to question whether the ALJ was aware that Haack received daily treatment. The increase in appointments was not internally inconsistent, as it suggested that Haack's condition was worsening.

The court agrees that the change in Dr. Gupta's assessment of Haack between November 2009 and January 2011 appears inconsistent on its face. However, it is common for claimants suffering from a mental illness to experience great fluctuations in their condition. ***Fuchs v.***

*Astrue*, 873 F.Supp.2d 959, 971-972 (N.D. Ill. 2012) (citing *Phillips v. Astrue*, 413 Fed.Appx. 878, 886 (7th Cir. 2010)). In fact, the regulations acknowledge that particular problems arise when evaluating individuals who have long histories of repeated hospitalization and outpatient care. In such cases, the individual might have her life structured in a way to minimize stress and reduce symptoms than her symptoms or signs may indicate. For this reason, "[t]he results of a single examination may not adequately describe [the claimant's] sustained ability to function. It is, therefore vital that [the ALJ] review all pertinent information relative to [the claimant's] conditions, especially at times of increased stress." **20 C.F.R. Part 404, Subpart P, Appendix 1**.

The ALJ stated that Dr. Gupta's report was inconsistent because his diagnoses and treatment did not change. However, the diagnosis of bipolar disorder anticipates fluctuation with the patient's mood and abilities. It was not necessary for Dr. Gupta to change the diagnosis in order to reflect that Haack's symptoms changed. Regardless, Dr. Gupta's treatment did change, as he directed closer follow up appointments.

The Commissioner also complains that Haack was unable to point to any medical evidence to explain her worsening prognosis. However, Dr. Gupta assigned lower GAF scores as her treatment continued, and Haack was committed to the hospital involuntarily on multiple occasions. Although there were some inconsistencies between appointments, upon review it appears that the ALJ cherry-picked the evidence that supported his unfavorable decision and did not evaluate her mental health treatment as a whole. It is not clear that the ALJ appreciated that fluctuations were common among mental illnesses.

The Commissioner argues that Haack's condition was not episodic in nature and that

Haack experienced substantial periods of stability that were disrupted only by four episodes over a four year period caused by her failure to take medication and her cannabis abuse. Because Haack generally was well and did not suffer serious limitations during these sustained periods, she was not disabled. However, it is not clear that the ALJ considered Haack's treatment as a whole. The ALJ made no mention of an earlier report prepared in 2008, which stated that Haack had severe delusional thought processes, auditory hallucination, was not sleeping, was refusing to eat when she was psychotic, and had extreme mood lability. Nor did the ALJ refer to Haack's hospitalization for her mental impairment between the times the reports were prepared or to her three other hospitalizations. Additionally, over the course of the last year, Haack did not received a GAF score higher than 50, indicating serious problems. The only evidence the ALJ pointed to in contradiction was the reports of consultative Drs. Stacia Hall, J. Grange, and Michael Cremerius, but as explained below this reliance is misplaced.

Moreover, the record does not reflect that the ALJ considered that "mental illness in general and bipolar disorder in particular (in part because it may require a complex drug regimen to deal with both the manic and the depressive phases of the disease . . . ) may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." ***Kangail v. Barnhart***, 454 F.3d 627, 630 (7th Cir. 2006) (citing Donald M. Hilty et al., "A Review of Bipolar Disorder Among Adults," 50 Psychiatric Services 205–08 (1999); Mark Oflson et al., "Bipolar Depression in a Low–Income Primary Care Clinic," 162 Am. J. Psychiatry 2150 (2005). The ALJ had an affirmative duty to consider the reasons for Haack's failure to follow the treatment plan. ***Roddy***, 705 F.3d 638. Even if Haack generally was well, her disease may have caused her to quit taking her medication, which in turn would have led to decompensation and time away

from work. It is not clear from the record what effect, if any, these absences would have had on the availability of employment.

In support of his decision, the ALJ relied on the opinions of consultative Drs. Stacia Hall, J. Grange, and Michael Cremerius. The parties dispute whether Dr. Nordstrom's opinion supported Dr. Gupta's and whether the ALJ's reliance on these opinions was misplaced. Dr. Nordstrom stated that Haack's GAF score ranged from 35 to 50 during a manic or depressive episode, and otherwise was 65, indicating some mild symptoms. The Commissioner argues that because Haack had substantial periods of stability, she generally displayed only mild symptoms. Although Haack was hospitalized four times, this does not mean that these were her only manic or depressive episodes– it shows that these were the only episodes severe enough to result in involuntary hospitalization. The amount of time Haack would display severe symptoms rather than mild symptoms is not clear from Dr. Nordstrom's report.

Moreover, since the time Drs. Hall and Grange completed their reports, 844 additional pages of medical evidence were received by the Social Security Administration. Dr. Cremerius also completed his report without reviewing Exhibits 13F through 27F. This additional medical evidence included three of Haack's inpatient hospitalizations and treatment notes from therapists, day treatment specialists, Dr. Gupta, and North Shore Health Center. The ALJ's reliance on these obsolete opinions that did not include review of three of Haack's four hospitalizations was misplaced. The frequency and extent of her hospitalizations may have suggested a greater degree of severity than the physicians originally believed and may have weighed heavily on their opinions. This appears especially likely in light of the evidence Haack submitted with her reply brief.

13

Haack filed a secondary application for Social Security Benefits on April 8, 2011 and received a favorable decision. The ALJ gave great weight to the opinions of Dr. Gupta, finding them consistent with the record, and further relied on the opinion of an impartial medical expert, Dr. Brook. Dr. Brook considered all of Haack's medical records, including the pages omitted from Drs. Hall, Grange, and Cremerius' review, and he agreed with Dr. Gupta's assessment that Haack had marked loss in concentration and maintaining socially appropriate behavior and could not hold a job.

Without inquiry the ALJ did not know what effect, if any, the additional medical evidence would have had on the opinions of Drs. Hall, Grange, and Cremerius. The only opinion that took this additional medical evidence into consideration was Dr. Gupta's, and the ALJ has not pointed to any evidence of record which contradicted his opinion. Because the ALJ's decision ignored substantial and recent medical notes, the court finds that it was not supported by substantial evidence and must be remanded for further consideration.

Haack next challenges the ALJ's credibility finding. This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. ***Schmidt v. Astrue***, 496 F.3d 833, 843 (7th Cir. 2007); ***Prochaska v. Barnhart***, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported ... can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles his opinion to great deference. ***Nelson v. Apfel***, 131 F.3d 1228, 1237 (7th Cir. 1997); ***Allord v. Barnhart***, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. ***Steele v. Barnhart***, 290 F.3d

936, 942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimaint's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. §404.1529(a);** *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007)("subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. §404.1529(c)**; *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005)("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.")

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective

15

medical evidence." SSR 96-7p, at *1. *See also* **Indoranto v. Barnhart**, 374 F.3d 470, 474 (7th Cir. 2004); **Carradine v. Barnhart**, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).
>
> **Luna v. Shalala**, 22 F.3d 687, 691 (7th Cir. 1994); *see also* **Zurawski v. Halter**, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ has discounted the claimant's description of pain because it was inconsistent with the objective medical evidence, he must make more than "a single, conclusory statement . . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." **SSR 96-7p, at *2.** *See* **Zurawski**, 245 F.3d at 887; **Diaz v. Chater**, 55 F.3d 300, 307-08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). He must "build an accurate and logical bridge from the evidence to [his] conclusion." **Zurawski**, 245 F.3d at 887 (*quoting* **Clifford v. Apfel**, 227 F.3d 863, 872 (7th Cir. 2000)). When the evidence conflicts regarding the extent of the claimant's limitations, the ALJ may not simply rely on a physician's statement that a claimant may return to work without examining the evidence the

16

ALJ is rejecting. *See **Zurawski***, 245 F.3d at 888 (*quoting **Bauzo v. Bowen***, 803 F.2d 917, 923 (7th Cir. 1986)) ("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be *examined*, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight.") (emphasis in original).

In his decision, the ALJ explained that Haack was not disabled because she retained the ability to perform personal care, prepare meals, clean, do laundry, go outside, drive, and shop once a week. Haack challenges this statement because the ALJ ignored a portion of the Function Report that revealed that she needed help to care for her pets and reminders to take her medications. However, Haack does not dispute that she could perform the daily tasks listed by the ALJ. The statement she pointed to indicating that she needed reminders to take medication was contradicted by her boyfriend's statement that Haack did not need reminders. Because the ALJ pointed to several activities that Haack did not dispute she could perform on a sustained basis and the statements to which she pointed were contradicted by the record, the court finds that the ALJ's reliance on the activities Haack could perform did not render his credibility determination patently wrong.

Haack also complains that the ALJ's decisions casts doubt on whether he decided her case in an impartial manner because he cherry-picked the evidence and criticized Haack for pursuing disability benefits. The court does not agree that the ALJ criticized Haack for pursuing benefits and finds no language in his opinion to support this assumption. Although the court agrees that the ALJ cherry-picked the evidence, the court already has directed the ALJ to reconsider the RFC on remand.

Haack's final argument is that the ALJ improperly determined that Haack's impairments

did not meet or medically equal Listing 12.04. For a claimant to show that she meets a listed impairment, she must show her impairment meets each required criterion and bears the burden of proof in showing her condition qualifies. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). A condition that meets only some of the required medical criteria, "no matter how severely," will not qualify as meeting a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Section 12.00(A) of the social security regulations describes the structure of Listing § 12.04. Specifically, the regulations state that if an "impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria," an impairment will successfully meet the listing. **20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A)**. Listing § 12.04 states in relevant part:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> 1. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> * * *
>
> B. Resulting in at least two of the following:
>
> > 1. Marked restriction of activities of daily living; or
> >
> > 2. Marked difficulties in maintaining social functioning; or
> >
> > 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> >
> > 4. Repeated episodes of decompensation, each of extended duration;

The parties agree that Haack was diagnosed with manic depressive disorder and

18

displayed some of the symptoms identified in Part A. However, the ALJ determined that Haack's resulting limitations did not satisfy the Paragraph B criteria. Haack complains that in assessing whether she met the Paragraph B criteria the ALJ ignored Dr. Gupta's assessment and restriction recommendations. As the court explained above, it is not clear that the ALJ took the medical records Haack submitted after the time the consultative doctors submitted their reports into consideration. The ALJ ignored large portions of Haack's medical history, particularly that of her most recent appointments. On remand, the ALJ must take the additional evidence into consideration when assessing whether Haack met the Paragraph B criteria.

Based on the foregoing the decision of the Commissioner is **REMANDED**.

ENTERED this 31st day of July, 2013

/s/ Andrew P. Rodovich
United States Magistrate Judge